UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:11-cr-269-T-23TGW
 8:14-cv-2208-T-23TGW

MICHAEL GARCIA
_____/

**O R D E R**

Garcia moves under 28 U.S.C. § 2255 (Doc. 1) to vacate his sentence and challenges the validity of his convictions both for use of interstate commerce in the commission of a murder-for-hire and for conspiracy to use interstate commerce in the commission of a murder-for-hire, for which he serves 236 months' imprisonment. Garcia's motion lacks merit because in the plea agreement he waived the right to assert the grounds in the motion to vacate.

**I. FACTS**[1]

> Between an unknown date in 2006 through as late as June 2008, Michael Garcia used, caused others to use and agreed with others to use facilities of interstate commerce, including the telephone and automobiles, and the mail with the intent that the murder of Thomas Lee Sehorne (Lee Sehorne) be committed, as consideration for the promise and agreement to pay $60,000 in U.S. currency. Between those dates, Garcia was approached by Lee Sehorne's wife, Cristie Sehorne, and her boyfriend, Jerry Alan Bottorff, who offered to pay Garcia $60,000 to kill Lee Sehorne. Eventually Garcia agreed to find someone who would commit the murder and he recruited Luis Angel Lopez. On June 7, 2007, between approximately 2:00 a.m. and 3:00 a.m., Garcia and Lopez traveled by vehicle from Garcia's home in Brandon, Florida, to the Sehorne residence in Lithia, Florida,

---

[1] This summary of the facts derives from the plea agreement (Doc. 18).

and waited outside the home for Lee Sehorne to return from picking up a friend at the Tampa airport. When Lee Sehorne arrived at his residence, Lopez shot and killed him. Garcia and Lopez fled the scene. Garcia later disposed of the murder weapon.

In the weeks leading up to the murder through the early morning hours of June 7, 2007, Garcia, Lopez, Bottorff and Cristie Sehorne used facilities of interstate commerce to plan, coordinate and carry out the murder of Lee Sehorne. Cristie Sehorne later used the mail and telephone to make claims as a beneficiary of Lee Sehorne's life insurance policies which totaled $1,000,000. It had been agreed between Garcia, Bottorff and Cristie Sehorne that the $60,000 payment would come from the life insurance proceeds payable upon Lee Sehorne's death.

## II.  GARCIA'S PROPOSED AMENDMENT AND MOTION TO INCLUDE HIS DECLARATION

After his claims in this action were fully briefed, Garcia submits (Doc. 19) an amendment to his motion to vacate to include a claim that the United States violated a promise to move under Rule 35, Federal Rules of Criminal Procedure, to reduce a sentence.  The United States correctly opposes the motion (1) because the proposed amendment is time-barred and (2) because the alleged promise for a reduction under Rule 35 is not for the underlying conviction.  Later, Garcia moves (Doc. 20) to "Expand Record to Include Additional Declaration by Defendant."  The United States correctly opposes the motion because the proposed affidavit (1) is another attempt to raise an additional claim and (2) purports to attest to the thoughts or mental processes of persons other than Garcia, specifically, his trial counsel and a special agent.

As determined below, both an amendment and an expansion of the record would prove futile.

## III. GROUNDS

Garcia alleges that trial counsel rendered ineffective assistance (1) by not moving to dismiss the information, which Garcia contends violates his immunized debriefing in an earlier criminal prosecution, and (2) by not objecting to the district court's imposition of a sentence consecutive to the sentence for the earlier criminal conviction instead of a concurrent sentence with the earlier conviction. Lastly, Garcia alleges that the magistrate judge lacked the authority to accept his guilty plea.

The last ground is baseless. Garcia entered his guilty plea before the magistrate judge, who ensured both that Garcia understood the terms of the plea agreement and that Garcia was freely, voluntarily, and knowingly pleading guilty. The magistrate judge recommended (Doc. 23 in 11-cr-269) that the district judge accept the plea. After no objection was filed, the district judge, not the magistrate judge, accepted the guilty plea. (Doc. 30 in 11-cr-269)

Garcia's remaining claims lack merit. In *United States v. Michael Garcia*, 8:08-cr-256-T-27TGW ("the drug case"), Garcia was prosecuted for eleven counts of possession with the intent to distribute both cocaine and "MDMA" and for one count of both conspiracy to possess with the intent to distribute "MDMA" and possession of a firearm by a convicted felon. Garcia pleaded guilty without the benefit of a plea agreement. Nevertheless, Garcia cooperated and disclosed the identities of the persons involved in the unsolved murder of Lee Sehorne. As relevant to the present action, Garcia claims (1) that the United States violated a promise by using information provided by him in a debriefing that occurred before the filing of charges

in the present action ("the murder-for-hire prosecution") and (2) that he was promised that any sentence imposed for his involvement in the murder-for-hire prosecution would run concurrent with the sentence in the drug case. The terms of the plea agreement bar Garcia's claims.

**<u>Collateral Waiver in Plea Agreement:</u>**

Garcia's conviction is based on a negotiated plea. The plea agreement specifically states that Garcia "expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the application guidelines range pursuant to the United States Sentencing Guidelines," except for certain inapplicable exceptions. (Doc. 18 at 12–13). Garcia's waiver of the right to challenge the guidelines sentence is controlling and the appeal waiver precludes Garcia's ineffective assistance of counsel claims, as *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005), explains:

> [A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. [A] contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless.

*See also United States v. Wilson*, 445 Fed. App'x 203, 208–09 (11th Cir. 2011) (enforcing the appeal waiver in a plea agreement and applying *Wilson* to dismiss the appeal of a claim of ineffective assistance of counsel at sentencing); *Demello v. United States*, 623 F. App'x 969, 972–73 (11th Cir. 2015) (same).

When he pleaded guilty Garcia admitted (1) that the plea agreement is not binding on the district court and, if the district court "does not follow any of the provisions of [the] Plea Agreement, [Garcia] cannot later complain and ask to withdraw [his] plea of guilty" (Transcript of Guilty Plea Hearing, Doc. 31 at 25 in 11-cr-269); (2) that he was waiving his "right to appeal [and his] right to collaterally challenge any sentence [he] receive[d] unless certain events occur" (*Id.* at 27); (3) that he was waiving any challenge "to how the charges were brought against [him and] how the evidence was gathered" (*Id.* at 39); and (4) that no one had promised him anything — other than what was in the plea agreement — to induce him to plead guilty, including no promise of "a specific term of imprisonment." (*Id.* at 29 and 36) Finally, Garcia answered "No" when asked if he had "any questions about anything that we have discussed today, or for that matter anything that we did not cover." (*Id.* at 44)  Even if not barred by the collateral waiver, Garcia's claims lack merit.

**Ineffective Assistance of Counsel:**

Garcia claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the

> Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Garcia must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Garcia must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Although the *Strickland* standard controls a claim that counsel was ineffective for recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), the quantum of evidence needed to prove both deficient performance and prejudice is different. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

Garcia alleges that trial counsel rendered ineffective assistance (1) by not moving to dismiss the information, which Garcia contends violates his immunized debriefing in the drug case, and (2) by not objecting to the district court's imposition of a consecutive, instead of a concurrent, sentence to the sentence in the drug case. First, a guilty plea — either with or without a plea agreement — waives a

non-jurisdictional defect that allegedly occurred before the entry of the plea, as *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), explains:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

This waiver of rights precludes most challenges to the conviction. "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). *See also United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings.") and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). A guilty plea waives a claim based on a pre-plea event, including a claim of ineffective assistance of counsel. *Wilson*, 962 F.2d at 997. Consequently, the entry of a guilty plea waives a claim that occurred before entry of the plea, including both a substantive claim and a purported failing of counsel, but neither a jurisdictional challenge nor a voluntariness challenge to the plea, neither of which Garcia asserts.

As discussed above, the magistrate judge ensured that Garcia understood that he was waiving any challenge "to how the charges were brought against [him and] how the evidence was gathered." (Transcript of Guilty Plea Hearing, Doc. 31 at 39) Consequently, Garcia's claim that counsel was ineffective for not moving to dismiss the information is foreclosed by the guilty plea.

Second, Garcia faults counsel for not objecting to the imposition of a sentence consecutive to the sentence in the drug case. As discussed above, Garcia assured the magistrate judge that no one had promised him anything — other than what was in the plea agreement — to induce him to plead guilty, including no promise of "a specific term of imprisonment." (*Id.* at 29 and 36)

Moreover, under the terms of the plea agreement, the United States agreed to not oppose Garcia's request for a sentence concurrent with the sentence in the drug case. (*Id.* at 3) At sentencing the United States went beyond that agreement by recommending a concurrent sentence. (Transcript of Sentencing Hearing, Doc. 322 at 11 in 11-cr-269) Notwithstanding that recommendation, the district court determined that a concurrent sentence would not serve the ends of justice. "I have to reject the notion . . . that [Garcia] should receive no increment of punishment for this offense; in other words, a concurrent and coterminous sentence with the drug trafficking offense. It seems to me to be unconscionable." (*Id.* at 33) "The laws of the United States are richly offended by this sort of conduct and it simply — in order to establish the statutory purposes of sentencing, it strikes me that a murder must be singularly and distinctively punished and to simply blend it into a drug trafficking

offense as a payment for cooperation is not sufficiently responsive to the demands of justice." *(Id.* at 37)  Garcia is entitled to no relief.

Accordingly, the proposed amendment (Doc. 19) to the motion to vacate is **STRICKEN** and the motion (Doc. 20) to expand the record is **DENIED**.  The motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**.  The clerk must file a copy of this order in the criminal case, enter a judgment against Garcia in the civil case, and close this civil case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Garcia is not entitled to a certificate of appealability ("COA").  A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Garcia must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Garcia is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Garcia must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 27, 2019.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE